# IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| **STEPHEN WHITAKER,** )<br>             **Plaintiff** )<br>**v.** )<br>                )<br>**HEIDI STEWARD,** Acting Director, )<br>ODOC; **STEVE ROBBINS**, Chief )<br>Financial Officer, ODOC; **BOB CULP,** )<br>Central Trust Manager, ODOC; **N. OGLE** )<br>Financial Services, ODOC; **B. MOORE,** )<br>Business Services, ODOC; **DR. DIGULIO,** )<br>Medical Director, ODOC; **CRAIG   PRINS,** )<br>Inspector General, ODOC; **BRANDON** )<br>**KELLY,** Superintendent, Oregon State )<br>Penitentiary; **MICHEAL YODER,** )<br>Asst. Superintendent, Oregon State )<br>Penitentiary; **CARRIE COFFEY,** Medical )<br>Manager, Oregon State Penitentiary; )<br>**JEREMY NOFZIGER,** Hearings Officer, )<br>Oregon State Penitentiary; )<br>**CAPTAIN W. BELLMAN; CORPORAL** )<br>**BROWN; C/O M. COLEMAN;** )<br>**C/O E. SOLIS** )<br>             **Defendants** )<br>_____ ) | **PRISONER COMPLAINT**<br>**FOR VIOLATION OF**<br>**CIVIL RIGHTS**<br>Pursuant to<br>**42 § U.S.C. 1983**<br><br>**2:23-cv-00581-AN** |

### Jurisdiction and Venue

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3) and supplemental jurisdiction under 28 U.S.C. section 1367(a) as to state constitutional and law claims that derive from a common nucleus of operative fact. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

Page **1** of **12**

The United States District Court in the District of Oregon, Portland Division is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## Plaintiff

Plaintiff, **Stephen Whitaker,** at all times relevant was an inmate within the Oregon Department of Corrections (ODOC) and is currently incarcerated at the Snake River Correctional Institution (SRCI), at 777 Stanton Blvd, Ontario, Oregon 97914.

## Defendants

Defendant, **Heidi Steward**, is the Acting Director of the ODOC. She is involved in the acts and omissions alleged herein in a supervisory capacity and is sued in her individual and official capacities

Defendant, **Steve Robbins,** at all times relevant, was the Chief Financial Officer of the ODOC. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **Bob Culp,** at all times relevant, was the Central Trust Manager of the ODOC. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **N. Ogle,** at all times relevant, worked in Financial Services of the ODOC. He or She is directly involved in the acts and omissions alleged herein and is sued in his or her individual and official capacities.

Defendant, **B. Moore,** at all times relevant, worked in Business Services of the ODOC. He or She is directly involved in the acts and omissions alleged herein and is sued in his or her individual and official capacities.

Defendant, **Dr. Digulio,** at all times relevant, was the Medical Director of the ODOC. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **Heidi Montgomery,** at all times relevant, was a Nurse Practitioner at the Oregon State Penitentiary. She is directly involved in the acts

Page **2** of **12**

and omissions alleged herein and is sued in her individual and official capacities.

Defendant, **Carrie Coffey,** at all times relevant, was the Nurse Manager at the Oregon State Penitentiary. She is directly involved in the acts and omissions alleged herein and is sued in her individual and official capacities.

Defendant, **Craig Prins,** at all times relevant, was the Inspector General of the ODOC. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **Brandon Kelly,** at all times relevant, was the Superintendent of the Oregon State Penitentiary. He is involved in the acts and omissions alleged herein in a supervisory capacity and is sued in his individual and official capacities.

Defendant, **Michael Yoder,** at all times relevant, was the Assistant Superintendent of the Oregon State Penitentiary. He is involved in the acts and omissions alleged herein in a supervisory capacity and is sued in his individual and official capacities.

Defendant, **Jeremy Nofziger,** at all times relevant, was an Hearing Officer at the Oregon State Penitentiary. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **Captain W. Bellman,** at all times relevant was the Reviewing Supervisor at the Oregon State Penitentiary. He or she is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

Defendant, **Corporal Brown,** at all times relevant, was a Staff Witness at the Oregon State Penitentiary. He or she is directly involved in the acts and omissions alleged herein and is sued in his or her individual and official capacities.

Defendant, **M. Coleman,** at all times relevant, was a correctional Officer at the Oregon State Penitentiary. He or she is directly involved in the acts and omissions alleged herein and is sued in his or her individual and official capacities.

Defendant, **E. Solis**, at all times relevant, was a correctional Officer at the Oregon State Correction Institution. She is directly involved in the acts and

Page **3** of **12**

Defendant(s), **Jane and/or John Doe(s)**, At all times relevant, were officials of the Custody Claims Unit at The Oregon Department of Administrative Services, Risk Management Division. They are directly involved in the acts and omissions alleged herein and are sued in their individual and official capacities.

All Defendants, at all times relevant, acted in their official capacities under color of State law.

### Introduction

Plaintiff alleges that the acts and omissions of the Defendants violated the principle of separation of powers enshrined in the Constitution of the United States and Article III sec.1 of the Oregon State Constitution, violated the Fourth Amendment of the United States of America and Article I sec. 9 of the Oregon Constitution, violated the Seventh Amendment of the United States Constitution and Article I sec. 17 and Article VII (Amended) sec. 3 of the Oregon State Constitution, right to a jury trial in a civil case, violated the Eighth Amendment of the United States Constitution and Article I sec. 13 and 16 of the Oregon State Constitution, prohibiting cruel and unusual punishment, deprived Plaintiff of substantive due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I sec. 10 of the Oregon State Constitution.

Plaintiff further alleges that the acts and omissions of the Defendants violated federal and state laws and in light of Article VII (Original) section 12 of the Oregon Constitution, which limits even county courts to civil jurisdiction not exceeding $500.00, is not the proper purview of the executive branch and was used punitively to arbitrarily increase monetary punishment in the form of unlimited restitution. Plaintiff seeks monetary damages to be determined, declaratory judgment and injunctive relief.

### Statement of Claims

### Claim 1.

In the Feb. 4-10, 2021 prison newsletter, it was announced "Due to the way

The Mar. 25-31, 2021 prison newsletter had an "Informational Briefing" explaining "protected funds" which once again listed "the *second* Economic impact Payment (the $600 stimulus) issued by the IRS" as an example of protected funds that are protected from debt collection by state or federal law.

Petitioner filed a 2020 1040 tax return, in order to receive his Recovery Rebate Credits from the CARES Act and the Coronavirus Response and Relief Supplemental Appropriations Act. He also filed a Form 8888 so that only the 2nd EIP would be sent to the ODOC's Central Trust.

Petitioner discovered $8.61 credited to his trust account and sent an e-mail to Central Trust inquiring about the origin of said funds. Defendant, B. Moore replied that on 8/23/2021, $605.55 was received from the U.S. Treasury.

26 U.S.C. § 6428A (6) states "As soon as practicable after the date on which the Secretary distributed any payment to an eligible taxpayer pursuant to this subsection, the Secretary shall send notice by mail to such taxpayer's last known address. Such notice shall indicate the method by which such payment was made, the amount of such payment, and a phone number for the appropriate point of contact at the Internal Revenue Service to report any failure to receive such payment." Plaintiff never received this notice.

Petitioner sent an Inmate Communication (kyte) on 9/19/21 to Central Trust disputing the confiscation of funds per OAR 291-158-0081.

On 9/21/21, N. Ogle, Financial Services, replied that even though the CRRSAA funds were considered protected by statute, the IRS considered the 2020 Recovery Rebate Credits "tax refunds" and therefore Oregon DOJ and ODOC deemed them not protected.

On 10/17/21 Petitioner then kyted ODOC's CFO, Steve Robbins per administrative procedure.

On 11/16/21 Defendant, Steve Robbins responded that "The CFO office is forwarding your correspondence to Bob Culp, Central Trust Manager who can be

On 2/25/22, when no response was forthcoming from Bob Culp, Petitioner filed a Tort Claim Notice with Oregon Department of Administrative Services, Risk Management.

On 3/4/22 Petitioner received acknowledgment of receipt of said Notice of Tort from Administrative Services, Risk Management.

On 3/17/22 Petitioner received a denial of said claim from Administrative Services, Risk Management.

26 U.S.C. § 6428A is *TITLED* "Additional **2020 recovery rebates** for individuals". The only way to receive any Economic Impact Payment was by filing a Tax Return. Therefore, any payment would come from the IRS as a "Tax Refund". This interpretation is fundamentally disingenuous and a blatant disregard of the legislative intent of the statute. ODOC doesn't accept electronic direct deposits, which are the only type of payment specifically defined in the Administrative Provisions of the statute as "Encoded Payments". Therefore the only payment type accepted by ODOC would, by definition be classified "Other Payments", which, 26 U.S.C. § 6428A  administrative provisions state: "the financial institution (ODOC), upon the request of the account holder (Plaintiff), shall treat the amount of the funds in the account at the time of the request, up to the amount of the applicable payment (in addition to any amounts otherwise protected under part 212 of title 31, Code of Federal Regulations), as exempt from a garnishment order without requiring the consent of the party serving the garnishment order or the judgment creditor (also ODOC)." Plaintiff made such a request in both review process communications.

## Claim 2.

Petitioner has a history of seizure disorder predating his incarceration. In ODOC custody, he was hospitalized multiple times for seizures. Medication that mitigated said seizures was discontinued. Seizures became more frequent and severe as a result, which Petitioner communicated to NP Heidi Montgomery

On 3/31/17, Petitioner was taken to segregation for ingestion of alcohol. Petitioner was observed having a seizure and taken to the Hospital. A Misconduct Report was written by C/O Coleman, including: "If the medical trip is determined to be related to the intoxication, inmate Whitaker should be held responsible for all charges associated with the medical trip. The costs will be determined at a later date." The misconduct report was reviewed and approved by Cpt. Bellman.

On 4/04/17 a hearing was held by Hearing Officer Nofziger where Petitioner was found guilty of Contraband I, a Level 2 prison rule infraction. Petitioner was given 30 days segregation, 14 days loss of privileges and no fine because H/O Nofziger knew the medical costs would far exceed the $100.00 maximum fine allowed in the ODOC Rules of Misconduct (OAR 291-105) sentencing grid. Any other violator of the same rule violation, who did not have a seizure disorder, would never have been subjected to any "restitution". In fact, had it not been for the seizure, Petitioner would never have been taken to the hospital at all.

On 5/12/17 a restitution hearing was held by H/O Nofziger where petitioner was found liable for $3,625.30 for medical costs. Petitioner had tried multiple times to get medical records proving that he had a well documented seizure disorder and had been taken to the hospital, for said seizures, by ODOC many times since his incarceration, both before and after the incident at issue. The key differences in this case were lack of mitigating medication and ingestion of alcohol. A "but for" standard of liability was not proved. Instead, it is much more likely that the withdrawal and subsequent denial of medication, that at least had somewhat mitigated Petitioner's seizures, was the cause of Petitioner's seizure in DSU.

Petitioner had conveyed to Nurse Practitioner Heidi Montgomery that his Seizures had substantially increased in frequency and intensity since medication had been withheld. Petitioner had on multiple occasions requested either

Page 7 of 12

resumption of medications denied or alternative treatment of his documented seizures. He was denied.

Carrie Coffey, the OSP Nurse Manager's opinion was the "proof" that Hearing Officer Nofziger relied on. She is neither a neurologist nor seizure specialist. By rule it presumably would be the medical department that would be the recipient of said "restitution". This seems an extraordinary conflict of interest.

No crime was committed, there was no victim (as defined by statute or Oregon's Constitution) and no property was damaged. Therefore, no "restitution" is legally valid.

ODOC made the decision to send petitioner to the hospital for statutorily mandated "adequate medical care", as petitioner was unable to make that decision due to seizure and more importantly being in ODOC custody. The reason documented was "due to having seizer's (sic) once he was admitted to DSU"

The Payor listed on the hospital paperwork was Correctional Health Partners out of Denver, Colorado.

Upon information and belief, Petitioner asserts that Correctional Health Partners is a "third party administrator" of health insurance.

Upon information and belief, Petitioner asserts that the Oregon Health Authority pays medical costs for "institutionalized persons" under the medical assistance program, which is subsidized by the federal Medicaid program.

For these reasons Petitioner believes that ODOC is owed no "restitution". There is no theory of civil liability that would survive judicial procedure. This is financial abuse of a vulnerable person (as defined by ORS 125.005(3)), unjust enrichment and perpetrates fraud against Medicaid, Correctional Health Partners, and the Oregon Health Authority.

The legislature enacted ORS 423.105 obligating inmates to pay *court-ordered financial obligations* while incarcerated (10% for said debt, and 5% for a "transitional savings account"). After the AIC has at least $500 in the transitional fund, 15% for court ordered debt.

restitution in a disciplinary hearing of a *rule violation*. Petitioner is unaware of any "garnishment order". Instead ODOC relies on department administrative rules to take funds from Petitioner's trust account. No court proceeding was used.

OAR 291-158-0065 allows an AIC to spend one half of the first $80 (up to $40) of funds deposited in their trust account and anything over that amount applied to the AIC's DOC debt until paid. In addition, any funds left at the end of the month are also taken. This is far beyond the maximum of 15% authorized by the Legislature for *court-ordered* debt by statute.

ODOC rules do not allow an "indebted" inmate to send money to family or purchase anything from outside the prison, including books and newspapers. This violates Petitioner's liberty interest in the funds held in his trust account and amounts to a "company store" scenario, a practice outlawed around 1900.

Per *Sandin v Conner*, said "restitution" imposes atypical and significant hardship on Petitioner in relation to the ordinary incidents of prison life. On multiple occasions, money owed to petitioner for pay shorted or, most recently, as a refund of money expended for glasses, has been posted to Petitioner's Trust Account at the end of the month. This deprives Petitioner of the use of said funds or limits the chance of such use of funds before they are taken, as Canteen has not been properly stocked for over a year and gives no indication of what is out of stock. Prices are randomly increased without notice. Every canteen order is a crap shoot. It is therefore impossible to actually use the funds "permitted" to be spent during any given month before the remainder is taken. This is a direct result of the issues complained of.

Religious items used to be offered on the prison canteen order form. Now they have to be ordered through a separate "package authorization" process. On 11-20-17, Petitioner sent a kyte to Central Trust asking whether "indebted" inmates were allowed to purchase-religious items under the new "package authorization" process and on Dec. 28, 2017 was informed by D. Niles of Central Trust: "not at

Page **9** of **12**

Petitioner's assertion is that these ODOC rules are an unconstitutional usurpation of judicial authority to illegally enrich the department through outright theft and impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

## Appointment of counsel

Petitioner requests the aid and assistance of counsel to properly preserve and present all relevant claims. Petitioner primarily relies on State cases and statutes as federal laws are much more difficult for Petitioner to understand. Petitioner believes federal jurisdiction is proper as Constitutional protections are the same and Correctional Health Partners, the payor on the hospital bill, is located in Denver, CO. Due to information from a C.U.R.E. newsletter and wording of certain statutes, Petitioner believes Oregon relies on federal funding for provision of prisoner's medical care. Petitioner has done much research, yet does not fully understand jurisdictional issues and the complexities of federal and state laws and regulations, and how their relationships and interpretations are intertwined.

Petitioner has not been able to secure legal counsel despite writing to multiple attorneys that handle prisoner rights issues. Since being at the institution petitioner is currently incarcerated at, petitioner believes that mail sent out to attorneys sought has been discarded by the institution's mailroom. Petitioner has specifically explained this concern in all letters to attorneys sought and has requested acknowledgment of receipt of them even if the attorney is unable to help and received none. Before being transferred to the current institution, petitioner consistently received a response from attorneys contacted. Petitioner knows this allegation is impossible to prove, but uses it to illustrate the effort made to obtain professional legal help and the petitioner's knowledge that said help is necessary to untangle complex issues confronted in petitioner's research and attempt to explain legitimate concerns to this court. Therefore, Petitioner avers that counsel should be appointed by this court.

## Legal authorities

**Claim 1:** 26 U.S.C. § 6428A; *Beal v Davids 1:21-cv-522; Stubbs v Pelky 2:22-cv-121*; ORS 291.003

**Claim2:** *Sandin v. Conner 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)*; Oregon Attorney General Opinion 8141; *State v Marino 551 P.2d 131*; *St. v Wilson 92 P.3d 729; State v. Dillon, 292 Or. 172, 637 P.2d 602;* ORS 421.105; ORS 423.020(d); ORS 423.093; ORS 153.008(2); ORS 179.490; ORS 124.100; ORS 124.110; ORS 125.005(3); ORS 414.426; ORS 743A.164 was in effect during all procedures complained of, repealed effective 1/1/2018, but Petitioner believes relevant to Claim 2.

## Administrative Remedies

**Claim 1.** OAR 291-109-0210(d) prohibits grieving issues where another process exists. OAR 291-158-0081 provides for Administrative review of Trust Account Issues. I followed this procedure by sending a kyte to Central Trust, then appealing to the Chief Financial Officer.

**Claim 2.** OAR 291-109-0210(g) prohibits grieving disciplinary hearings, findings, and sanctions. OAR 291-105-0085 provides an Administrative Review process and OAR 291-105-0100 provides a process for vacating or withdrawing a final order in the interest of justice. Petitioner exhausted both remedies. These were the only administrative remedies available to petitioner, confirmed by the hearing officer, Jeremy Nofziger at the hearing. Petitioner also sent a letter to Dr. Digulio, the ODOC Medical Director on 9/26/17 and received a response dated 11/03/17 which availed him no relief.

## Statute of Limitations

ORS 12.070. Action on judgment, decree or sealed instrument (1) An action upon a judgment or decree of any court of the United States, *or of any state* or territory within the United States shall be commenced within 10 years.

ORS 12.090. Accounts; accrual of cause of action; In an action to recover a

balance due upon an account, the cause of action shall be deemed to have accrued from the time of the last charge or payment proved in the account. Interest, financing and carrying charges shall not be deemed such a charge.

Said statutes should control any time limitations in this action. Alternatively, the continuing violation doctrine outlined in *Woods v. Hamkar (E.D. Cal. 2015)* should apply.

### Prayer for relief

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States and the State of Oregon.

A preliminary and permanent injunction declaring OAR 291-105-0069(1) invalid and ordering defendant Heidi Steward to repeal it.

Compensatory damages in the amount of: treble all monies unlawfully collected, $50,000.00 for mental and physical pain and suffering, and $100,000.00 for loss of use and profit of funds against defendants, jointly and severally.

Punitive damages in the amount of $250,000.00 against defendants, jointly and severally.

A jury trial on all issues triable by jury

Plaintiff's costs in this suit

Appointment of counsel

Leave to Amend after consultation with appointed counsel

Any additional relief this court deems just, proper, and equitable.

Dated: 4-17-23

Respectfully submitted,

Stephen Whitaker

Stephen Jason Whitaker #10008243
777 Stanton Blvd
Ontario, OR 97914

U.S. District Court for the District of Oregon

## CERTIFICATE OF SERVICE

CASE NAME: _Stephen Whitaker_    v. _Heidi Steward, et. al._

CASE NUMBER: (if known) _____

COMES NOW, _Stephen Whitaker_ , and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at _Snake River Correctional Institution 777 Stanton Blvd, Ontario, OR 97914_

That on the _19th_ day of _April_ , 20_23_ , I ~~personally placed in the~~ E-filed ~~Correctional Institution's mailing service~~ A TRUE COPY of the following:

_Civil Cover Sheet, Motion for Appointment of Counsel, Application to proceed informa pauperis, 6-mo Trust Account, Civil Rights Complaint (42§1983) and Supporting Documents_

I placed the above in a securely enclosed, postage prepaid envelope, to the person(s) named at the places addressed below:

_____    _____
_____    _____
_____    _____
_____    _____
_____    _____
_____    _____
_____    _____
_____    _____


_Stephen Whitaker_
(Signature)

Print Name _Stephen Whitaker_
S.I.D. No.: _10008243_
_777 Stanton Blvd_
_Ontario, OR 97914_
_____

Page 1 of 1 –Certificate of Service                    Form 03.015