IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN WHITAKER,

              Plaintiff,

      v.

HEIDI STEWARD, STEVE ROBBINS, BOB
CULP, N. OGLE, B. MOORE, CRAIG PRINS,
BRANDON KELLY, MICHEAL YODER,
CARRIE COFFEY, JEREMY NOFZIGER,
CORPORAL BROWN, and C/O E. SOLIS,

              Defendants.

Case No.: 2:23-cv-00581-AN

OPINION AND ORDER

---

Self-represented plaintiff Stephen Whitaker brings this action against defendants[1] Heidi Steward, Steve Robbins, Bob Culp, N. Ogle, B. Moore, Craig Prins, Brandon Kelly, Micheal Yoder, Carrie Coffey, Jeremy Nofziger, Corporal Brown, and C/O E. Solis, alleging claims under sections 9, 10, 13, 16, and 17 of Article I; section 1 of Article III; and sections 3 and 12 of Article VII of the Oregon Constitution and the Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff seeks declaratory and injunctive relief, as well as money damages totaling $401,790.82. On October 9, 2024, defendants filed a motion for summary judgment. After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, defendants' motion is GRANTED.

## LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact

---

[1] Dr. Digulio, Heidi Montgomery, Captain W. Bellman, and C/O M. Coleman were initially also named as defendants in this case but were dismissed for lack of service on January 18, 2024. *See* Order of January 18, 2024, ECF [23], at 2.

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

Plaintiff is an adult in custody ("AIC") at Snake River Correctional Institution ("SRCI"). Compl., ECF [2], at 2; Defs. Mot. Summ. J. ("Defs. Mot."), ECF [80], at 1. Defendants are current and former employees of the Oregon Department of Corrections ("ODOC") and are sued in both their individual and official capacities. Compl. 2-4; Defs. Mot. 2.

### A.     2017 Prison Disciplinary Hearing

On March 31, 2017, Correctional Officer M. Coleman ("Coleman") "could tell something was not normal" in plaintiff's cell because Coleman "could smell a very strong odor of alcohol and heard [plaintiff] making funny noises as if he was singing to himself." Decl. Jeremy Nofziger Supp. Defs. Mot., ECF [82], Ex. 1, at 13. Plaintiff's speech "was slurred," and plaintiff "appeared to be heavily intoxicated[,]"

so Coleman called for additional staff to take plaintiff to the disciplinary segregation unit ("DSU"). *Id.* After plaintiff was taken to DSU, Coleman searched plaintiff's cell and "found one large empty bag of homemade alcohol [and] two cups with [a] very small amount of alcohol left." *Id.*

Upon admission to DSU, plaintiff was examined by medical staff and taken to the hospital because he was having seizures. *Id.* Corporal Brown later reported that hospital staff determined that plaintiff had a blood alcohol content of 0.25. *Id.* at Ex. 1, at 7.

Later that day, Coleman issued a misconduct report to plaintiff based on these events. *Id.* at Ex. 1, at 13. Case No. 1703 OSP 0114 OSP 26 arose out of that misconduct report. *Id.* ¶ 5 & Ex. 1, at 7. On April 4, 2017, Assistant Inspector General Jeremy Nofziger ("Nofziger"), who was then a Correctional Hearings Officer, oversaw the prison disciplinary hearing for Case No. 1703 OSP 0114 OSP 26. *Id.* ¶ 6 & Ex. 1, at 8. He determined that plaintiff "possessed any intoxicant, thereby, violating Rule 1.10.01, Contraband I." *Id.* at Ex. 1, at 10.

On May 12, 2017, Nofziger oversaw the restitution hearing for Case No. 1703 OSP 0114 OSP 26. *Id.* at Ex. 1, at 7-9. That same day, he issued the Finding of Fact, Conclusion, and Order ("Final Order") for that case. *Id.* Plaintiff's sanctions included confiscation of contraband, thirty days of disciplinary segregation, fourteen days of loss of privileges, and a $3,625.30 fine to cover the costs of outside medical care due to his misconduct. *Id.* at Ex. 1, at 8.

On July 12, 2017, plaintiff petitioned the Inspector General for administrative review of Case No. 1703 OSP 0114 OSP 26 and requested that the Final Order be vacated in the interest of justice. *Id.* ¶ 8 & Ex. 1, at 3-6. On August 4, 2017, then-Inspector General Craig Prins ("Prins") denied plaintiff's petition for administrative review as untimely. *Id.* ¶ 9 & Ex. 1, at 1. Prins also denied plaintiff's request to vacate because, after a thorough review of the prison disciplinary case, Prins "determined that there was substantial compliance with the rule." *Id.* ¶ 10 & Ex. 1, at 1. The disciplinary proceeding associated with Case No. 1703 OSP 0114 OSP 26 was complete as of August 4, 2017. *Id.* ¶ 12.

**B.    Administration of AIC Trust Accounts**

Oregon Revised Statutes ("ORS") § 423.105 authorizes ODOC to collect "court-ordered

financial obligations" from an AIC's trust account and set up a "transitional fund" for AICs who have not been sentenced to death or life imprisonment. Or. Rev. Stat. § 423.105(2), (3). Chapter 291, Division 158 of the Oregon Administrative Rules ("OAR") sets forth ODOC's policies and procedures for the establishment and administration of AIC trust accounts. "DOC Debt" is "[a]ny debt the Department of Corrections is authorized to place on the inmate's trust account as debt owed to the Department of Corrections." Or. Admin. R. 291-158-0010(6). For example, ODOC may assess an AIC's account for sanctions resulting from disciplinary hearings and court-ordered costs and fees. Or. Admin. R. 291-158-0015(1), (2).

OAR 291-158-0065(1), which governs the collection of DOC Debt, provides in relevant part:

"(a) An inmate who has DOC debt may be permitted to spend one half of the first $80 (up to $40) of funds deposited into the inmate's general spending trust account for authorized expenditures during that calendar month.

(b) Any additional deposits received by the inmate into their general spending account during the calendar month shall be applied to the inmate's debt until such indebtedness is satisfied.

(c) Any unused funds remaining in an inmate's general spending trust account that were not transferred from the protected reserve account at the end of the last business day of the calendar month shall be applied to the inmate's indebtedness. Any changes to this scheduled date will be communicated by Central Trust."

"Eligible Deposits" are "[d]eposits made into an inmate's general spending account that are subject to the Department's debt collection procedures in these rules, including discretionary monetary awards made by DOC to inmates under the Performance Recognition and Award System . . . from legislatively-appropriated funds." Or. Admin. R. 291-158-0010(7). In contrast, "Protected Moneys" are "moneys deposited in an inmate trust account that are not subject to collection under state or federal law[.]" Or. Admin. R. 291-158-0010(22).

An AIC may obtain an administrative review of an issue regarding their account by sending Central Trust an Inmate Communication Form, or "kyte," within sixty days from the statement issue date. Or. Admin. R. 291-158-0081(1). Thereafter, "Central Trust will review relevant records to determine

whether any error occurred" and then "issue a final decision in writing within [thirty] days after receipt of the request for administrative review." Or. Admin. R. 291-158-0081(2).

**C.     Assessments Against Plaintiff's 2021 Tax Refund**

On August 23, 2021, plaintiff received a $605.55 tax refund from the United States Treasury. Decl. Bob Culp Supp. Defs. Mot., ECF [81], ¶ 15 & Ex. 2, at 4, Ex. 3. The $605.55 check that plaintiff received "was the product of the Recovery Rebate Credit ('RRC') that was introduced as part of the Coronavirus Aid, Relief, and Economic Security Act [], providing eligible individuals who did not receive their full Economic Impact Payment ('EIP'), or 'stimulus payment,' an opportunity to claim the missing amount on their tax refund." *Id.* ¶ 17 (citation modified). The Internal Revenue Service ("IRS") sent a notification informing ODOC that funds issued as part of EIP and RRC "may be reduced to pay off the debt [an AIC recipient] may owe to the agency" and that any RRC tax refund checks issued "w[ould] include the following information on the memo line: **12/2020 TAX REFUND**." *Id.* at Ex. 4 (emphasis in original). Plaintiff's check includes the memo line "12/2020 TAX REFUND." *Id.* at Ex. 3.

Plaintiff received two other deposits into his AIC trust account in the calendar month preceding the August 23, 2021, deposit of the $605.55 tax refund: a $0.07 interest distribution on August 3, 2021, and a $62.70 award on August 5, 2021. *Id.* at Ex. 2, at 4. Pursuant to OAR 291-158-0065(1), $0.04 of the interest distribution and $31.35 of the award were exempt from DOC debt collection. *See id.* ¶ 21. Accordingly, $8.61 of the $605.55 deposit was exempt from DOC debt collection, and the remainder was subject to assessments. *Id.* The following assessments were made against plaintiff's $605.55 deposit: court-ordered restitution of $60.56, court-ordered transitional savings of $30.28, and DOC Debt in the form of a medical disciplinary advance of $506.10. *See id.* ¶ 22 & Ex. 2, at 4.

Plaintiff alleges that on September 19, 2021, he sent a kyte to Central Trust disputing the assessments. Compl. 5. On September 21, 2021, N. Ogle replied that the IRS considered the 2020 RRC to be "tax refunds," and therefore, ODOC deemed them to be subject to collection. *Id.* On October 17, 2021, plaintiff sent a kyte to ODOC Chief Financial Officer ("CFO") Steve Robbins ("Robbins"). *Id.* On November 16, 2021, Robbins responded that the CFO office was forwarding the kyte to Central Trust

Manager Bob Culp. *Id.* at 5-6. On February 25, 2022, plaintiff filed a Tort Claim Notice with the Oregon Department of Administrative Services. *Id.* at 6. On March 17, 2022, the Oregon Department of Administrative Services denied his claim. *Id.*

## DISCUSSION

Plaintiff alleges claims under the Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments of the United States Constitution. The Court construes these claims as constitutional claims brought under 42 U.S.C. § 1983. *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (collecting cases) ("[A] [p]laintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

Plaintiff also alleges claims under sections 9, 10, 13, 16, and 17 of Article I, section 1 of Article III, section 3 of Article VII, and section 12 of the original version of Article VII of the Oregon Constitution. The Court construes these claims as claims brought under the Oregon Tort Claims Act ("OTCA"), ORS §§ 30.260-30.300. *See* Or. Rev. Stat. § 30.265(2) ("The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action under [the OTCA]."); *Barcik v. Kubiaczyk*, 321 Or. 174, 189-90, 895 P.2d 765 (1995) (citation omitted) (en banc) ("[A] private right of action for damages against a municipality or its employees does not exist directly under the Oregon Constitution, but is limited to extant common-law, equitable, and statutory remedies."); *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F. Supp. 728, 730 (D. Or. 1995) (citations omitted) ("[T]he appropriate remedy for constitutional violations by public bodies, officers, employees and agents is the [OTCA].").

Defendants move for summary judgment on five grounds: (1) the State of Oregon ("State") is the only proper defendant to plaintiff's state constitutional claims, and plaintiff's claims against the State are barred under the Eleventh Amendment; (2) plaintiff is not entitled to money damages for his state constitutional claims; (3) plaintiff's federal constitutional claims related to his 2017 prison disciplinary hearing are time-barred; (4) ODOC Central Trust's assessments against plaintiff's $605.55 tax refund pass

constitutional muster; and (5) defendants are entitled to qualified immunity from money damages. For the reasons that follow, defendants are entitled to summary judgment as to all of plaintiff's claims.

## A.     Timeliness

As an initial matter, plaintiff's claims relating to his 2017 prison disciplinary hearing and resulting restitution sanction are barred by the applicable statutes of limitations. "When, as here, a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts[.]" *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (citation and footnote omitted). Thus, "Oregon's two-year statute of limitations for personal injury actions applies to actions under 42 U.S.C. § 1983." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989) (per curiam) (collecting cases). Likewise, "ORS [§] 30.275(9) establishes a uniform two-year statute of limitations that applies to all claims brought under the [OTCA]." *Sherman v. State by & through Dep't of Hum. Servs.*, 368 Or. 403, 410, 492 P.3d 31 (2021) (en banc) (citation omitted). "[T]hat two-year limitations period applies in lieu of, trumps, or is superimposed upon, any other statute that provides a different limitations period." *Id.* (citation omitted).

Here, plaintiff's disciplinary hearing was complete as of August 4, 2017. Plaintiff filed his complaint on April 19, 2023, well more than two years later. Accordingly, to the extent that plaintiff's claims challenge his 2017 disciplinary hearing and the restitution sanction, those claims are time-barred.

## B.     Eleventh Amendment Immunity

### 1.     *Section 1983 Claims*

Section 1983 provides a cause of action against "persons" acting under color of state law who violate rights guaranteed by the Constitution. *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995), *as amended on denial of reh'g & suggestion for reh'g en banc* (Nov. 30, 1995). However, "[c]laims under [section] 1983 are limited by the scope of the Eleventh Amendment." *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997). The Eleventh Amendment prohibits a citizen from suing a state in federal court unless Congress abrogates, or a state waives, state sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999) (citations omitted).

"[A] suit against a state official in [their] official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Thus, state officials sued in their official capacity are not "persons" under section 1983 and are immune from suit under the Eleventh Amendment. *See id.*

"[T]here is one exception to this general rule: When sued for prospective injunctive relief, a state official in [their] official capacity is considered a 'person' for [section] 1983 purposes." *Doe*, 131 F.3d at 839 (emphasis omitted) (citing *Will*, 491 U.S. at 71 n.10; *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). Such relief "may not be premised on a wholly past violation of federal law"; only "'relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment[.]'" *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted). However, plaintiff does not allege any continuing or present violations by defendants, only three past assessments made on August 23, 2021, against his tax refund. Accordingly, the Eleventh Amendment bars plaintiff's section 1983 claims against defendants in their official capacities.

        2.    *State Law Claims*

To the extent that plaintiff bases his claims solely on the Oregon Constitution, plaintiff is limited to existing common-law, equitable, and statutory remedies. *See Barcik*, 321 Or at 190-91. However, "the [E]leventh [A]mendment bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their official capacities alleging a violation of state law." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (emphasis omitted) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *see also Johnson v. Brown*, 567 F. Supp. 3d 1230, 1257 (D. Or. 2021) (citing *Pennhurst*, 465 U.S. at 106) ("The Eleventh Amendment bars federal courts from providing forward-looking relief against a state official based on state law."). In other words, the limited "prospective injunctive relief" exception that applies to section 1983 claims does not apply when state officials are sued under state law. *See Pennhurst*, 465 U.S. at 104, 106. Accordingly, the Eleventh Amendment bars these claims.

To the extent that plaintiff alleges OTCA claims,[2] the Eleventh Amendment does not necessarily bar those claims.  The OTCA allows "an officer, employee, or agent of a public body" to be "held personally liable only when the requested prayer for relief exceeds the damages cap allowed under ORS [§§] 30.271, 30.272, or 30.273."  *Kramer v. S. Or. Univ.*, No. 1:13-cv-00340-CL, 2013 WL 4782154, at *6 (D. Or. Sept. 5, 2013) (citation omitted); Or. Rev. Stat. § 30.265(3)-(4).  Otherwise, "the court upon motion shall substitute the public body as the defendant."  Or. Rev. Stat. § 30.265(3).

Defendants argue that the State should be substituted for defendants and then dismissed pursuant to the Eleventh Amendment because plaintiff's alleged damages amount does not exceed the damages caps allowed under ORS §§ 30.271, 30.272, or 30.273.[3]  Not so.  As defendants calculate, plaintiff alleges $402,790.82 in damages.  Even ignoring plaintiff's alleged $250,000.00 in punitive damages, which "may not be awarded" on an OTCA claim, Or. Rev. Stat. § 30.269(1), plaintiff alleges $152,790.82 in compensatory damages.  Although this amount is less than the damages caps provided in ORS §§ 30.271 and 30.272, it is greater than that provided in ORS § 30.273.  *See* Or. Rev. Stat. § 30.273(2)(a), (3); *Tort Claims Table of Liability Limits*, Or. Jud. Dep't, https://www.courts.oregon.gov/Documents/Table-of-Liability-Limits.pdf (providing a liability limit of $128,400.00 for claims arising between July 1, 2021, and July 1, 2022).  To the extent that plaintiff alleges claims for damage to property—which defendants do not appear to contest—the damages cap in ORS § 30.273 would apply.  And defendants do not explain why the Eleventh Amendment would otherwise bar plaintiff's state law claims against defendants in their individual capacities.  *See Flores v. Or. Dep't of Corr.*, No. 2:22-cv-01399-SB, 2024 WL 2300771, at *7 (D. Or. May 21, 2024) (collecting cases).  Accordingly, plaintiff can maintain his state law claims against defendants individually in accordance with ORS § 30.265(4).  Nonetheless, these claims fail for the reasons stated in Section C below.

---

[2] Although plaintiff does not plead his state constitutional claims under or otherwise reference the OTCA, he alleges that he filed a tort claim notice on February 25, 2022.  Compl. 6.

[3] The Court notes that defendants did not file a motion to substitute the individual defendants with the State, as directed by ORS § 30.265(3), but instead argue in their motion for summary judgment that substitution is appropriate.

B.    **Qualified Immunity**

Although the Eleventh Amendment does not bar plaintiff's section 1983 claims against defendants in their individual capacities, those claims are barred by qualified immunity. Qualified immunity shields an official sued in their individual capacity from damages in a civil suit "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (citation modified).

The qualified immunity analysis can be distilled into two elements: whether (1) the alleged conduct would violate a constitutional or statutory right; and (2) the law, as it stood at the time of the conduct at issue, clearly established that the alleged conduct violated a constitutional or statutory right. *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citation omitted). For the reasons that follow, plaintiff fails to show a genuine issue of material fact as to whether defendants violated any of his asserted federal constitutional rights, and defendants are entitled to qualified immunity.

1.    *Fourth Amendment*

AICs have "extremely limited" Fourth Amendment rights. *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir. 1981) (citing *Lanza v. New York*, 370 U.S. 139, 143 (1962)), *abrogated on other grounds by United States v. Goseyun*, 789 F.2d 1386 (9th Cir. 1986). "In particular, the [F]ourth [A]mendment does not protect an [AIC] from the seizure and destruction of [their] property." *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984)). As the Ninth Circuit has explained, "[t]his does not mean a[n] [AIC] is without redress; it simply means a[n] [AIC]'s form of redress is through the [F]ifth and [F]ourteenth [A]mendments." *Id.* (citation omitted). Because plaintiff cannot state a Fourth Amendment claim based on the allegation that money was taken from his trust account, plaintiff's Fourth Amendment claim fails. *See Ross v. Myrick*, No. 2:18-cv-00046-YY, 2018 WL 8059563, at *4 (D. Or. Dec. 26, 2018) (citations omitted) ("[A]n [AIC] does not have a Fourth Amendment right to be free from the seizure of funds from his trust account."), *report and recommendation adopted in relevant part*, 2019 WL 1757518 (D. Or. Apr. 18, 2019), *aff'd*, 817 F. App'x 499 (9th Cir. 2020) (mem.).

2.      *Fifth and Fourteenth Amendments*

As an initial matter, plaintiff's Fifth Amendment "claim is plainly foreclosed by the [United States] Constitution." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Defendants are all state officials, and "the Fifth Amendment's due process clause only applies to the federal government." *Id.* (citations omitted).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Plaintiff has a protected property interest in the funds in his AIC trust account. *See Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985) (citations omitted) ("There is no question that [an AIC's] interest in the funds in [their] prison account is a protected property interest."). Plaintiff is thus entitled to due process in connection with any forfeiture of those funds. *See id.* "An agency . . . violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property without '[w]ithout underlying [statutory] authority and competent procedural protections.'" *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (alterations in original) (quoting *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)).

Here, the assessments made to plaintiff's account consisted of court-ordered restitution, court-ordered transitional savings, and DOC Debt associated with plaintiff's 2017 disciplinary hearing, in accordance with ORS § 423.105 and OAR 291-158-0015(1) and (2). ODOC regulations also provide for administrative review of issues regarding AIC trust accounts. *See* Or. Admin. R. 291-158-0081. Plaintiff's own allegations demonstrate that he was provided with administrative review after ODOC collected money from his account: plaintiff submitted a timely request for administrative review, and Central Trust timely issued a final decision regarding plaintiff's request. Because plaintiff received the process that was due, his Fourteenth Amendment claim fails.

3.      *Seventh Amendment*

The Seventh Amendment provides for the right of trial by jury for "suits at common law." U.S. Const. amend. VII. However, the assessments against plaintiff's 2021 tax refund are not a "suit at common law." Accordingly, plaintiff does not state a cognizable Seventh Amendment claim.

4.    *Eighth Amendment*

The Eighth Amendment protects against excessive bail, excessive fines, and cruel and unusual punishment. U.S. Const. amend. VIII. Plaintiff asserts that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment. However, nowhere in the complaint does plaintiff allege that the fines inflicted on him are grossly proportionate to his criminal offense. *See United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003). Moreover, "[t]he withdrawal of funds from an [AIC] trust account pursuant to court orders to pay debts that a[n] [AIC] elected to incur is not a 'punishment' or a denial of 'humane conditions of confinement' to which the Eighth Amendment applies." *Ross*, 2018 WL 8059563, at *5 (collecting cases); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Accordingly, plaintiff's Eighth Amendment claim fails as a matter of law.

Because plaintiff has not shown a triable issue as to whether defendants violated any of his federal constitutional rights, defendants are entitled to qualified immunity. Accordingly, summary judgment in defendants' favor on plaintiff's federal constitutional claims is appropriate.

**C.    State Law Claims**

Finally, even assuming that plaintiff has validly pleaded OTCA claims relating to the assessments against his 2021 tax refund, plaintiff's claims lack merit.

1.    *Article I, Section 9*

Article I, section 9 of the Oregon Constitution recognizes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Or. Const. art. I, § 9. "Although the syntax differs," the guarantees of Article I, section 9 of the Oregon Constitution and of the Fourth Amendment to the United States Constitution are "substantively the same": "for both provisions, the touchstone is reasonableness." *State v. Fair*, 353 Or. 588, 602, 302 P.3d 417 (2013) (citations omitted). AICs "are subject to a broad range of restrictions that might infringe on what otherwise would be constitutional rights of a person in a free society." *State v. Sanders*, 343 Or. 35, 40-41, 163 P.3d 607 (2007). For the same reasons that plaintiff does not state a cognizable Fourth Amendment claim, he also does not state a cognizable claim under Article I, section 9.

2.    *Article I, Section 10*

Article I, section 10 provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or. Const. art. I, § 10. However, "Article I, section 10, is not a 'due process' clause." *Smith v. Dep't of Corr.*, 219 Or. App. 192, 196, 182 P.3d 250 (2008) (citing *Davis v. Bd. of Parole*, 200 Or. App. 366, 369 n.3, 114 P.3d 1138 (2005)); *see State v. Stroup*, 290 Or. 185, 200, 620 P.2d 1359 (1980) (en banc) ("[T]he Oregon Constitution does not have a due process clause of its own[.]"). "Its principal function is to bar the legislature from eliminating common-law remedies that were available to redress injuries to 'person, property, or reputation,' without providing a 'constitutionally adequate substitute remedy.'" *Smith*, 219 Or. App. at 196 (citation omitted). To the extent that the protections of this provision extend to plaintiff in this context, the regulations governing the administration of AIC trust accounts "merely outline administrative procedures governing [AIC funds]; they do not limit or eliminate any common-law remedy that might be available to [AIC]s for any deprivation of their rights." *Id.* at 197. Therefore, the challenged rules do not violate Article I, section 10.

3.    *Article I, Section 13*

Article I, section 13 provides that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." Or. Const. art. I, § 13. To show that a practice offends this provision, an AIC must show that the "practice would be recognized as an abuse to the extent that it cannot be justified by necessity." *Sterling v. Cupp*, 290 Or. 611, 620, 625 P.2d 123 (1981) (en banc). Courts analyze whether the practice "constitutes a cognizable indignity and if so, whether it is justified by necessity." *Id.* at 622. Here, debt assessments against plaintiff's tax refund made pursuant to ODOC regulations for court-ordered financial obligations and a sanction in the form of reimbursement for outside medical costs cannot be said to constitute a "cognizable indignity" or "abuse," let alone one that cannot be justified by necessity. *See id.* Accordingly, the debt assessments that plaintiff challenges do not violate this provision.

4.    *Article I, Section 16*

Article I, section 16 provides, in relevant part: "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be

proportioned to the offense."  Or. Const. art. I, § 16.  "Oregon courts have largely interpreted the Oregon

State Constitution's prohibition of cruel and unusual punishment parallel to the U.S. Constitution Eighth

Amendment prohibition of cruel and unusual punishment." *Taylor v. Ridley*, No. 2:18-cv-00314-SU, 2018

WL 3550266, at *4 (D. Or. July 24, 2018) (citations omitted).  For the same reasons that plaintiff does not

state a cognizable Eighth Amendment claim, he also does not state a cognizable claim under Article I,

section 16.

       5.    *Article I, Section 17 and Article VII, Section 3*

      Article I, section 17 provides that "[i]n all civil cases the right of Trial by Jury shall remain

inviolate." Or. Const. art. I, § 17.  Similarly, Article VII, section 3 provides that "[i]n actions at law, where

the value in controversy shall exceed $750, the right of trial by jury shall be preserved[.]" *Id.* art. VII, § 3.

However, just as the assessments against plaintiff's tax refund are not a "suit at common law" under the

Seventh Amendment, neither are they a "civil case" or "action at law."  Accordingly, there is no claim to

which a right to a jury trial can attach, and plaintiff does not state a cognizable claim under these provisions.

       6.    *Article III, Section 1 and Article VII (original), Section 12*

      Section 1 of Article III provides:

> "The powers of the Government shall be divided into three separate branches, the
> Legislative, the Executive, including the administrative, and the Judicial; and no person
> charged with official duties under one of these branches, shall exercise any of the functions
> of another, except as in this Constitution expressly provided."

*Id.* art. III, § 1.  Section 12 of the original version of Article VII also conferred onto county courts, in

addition to probate and civil jurisdiction, "such criminal jurisdiction not extending to death or imprisonment

in the penitentiary, as may be prescribed by law."[4]  Or. Const. of 1859, art. VII, § 12.  In essence, plaintiff

contends that the assessments against his 2021 tax refund violate the principle of separation of powers

because there was no court proceeding that ordered the $3,625.30 restitution sanction, for which $506.10

was assessed against plaintiff's 2021 tax refund.

---

[4] "With the amendment of Article VII in 1911, the jurisdiction of county courts became statutory." *Caffey v. Lane County*, 298 Or. 183, 187 n.3, 691 P.2d 94 (1984) (en banc) (citing Or. Const. art. VII, § 2).

Because plaintiff's claims challenging his 2017 disciplinary hearing and the restitution sanction are untimely, the Court finds it unnecessary to address these provisions. The Court briefly notes, however, that neither statute that plaintiff cites, ORS §§ 137.103 and 137.106, limits ODOC's authority to administer AIC trust accounts. Plaintiff does not address any of the statutes that authorize the rules relating to debt assessments, such as ORS § 423.075(5)(d), which provides that the ODOC Director may adopt rules for the government and administration of the department; ORS § 421.125(2)(e), which explains that ODOC "shall adopt rules to[] [a]ssess and collect disciplinary fines and restitution from [AICs] for damages or destruction caused by [their] willful misconduct"; or ORS § 423.105(2)(a), which provides that ODOC "shall collect eligible moneys from an [AIC] trust account if the [AIC] owes court-ordered financial obligations[.]"

For the foregoing reasons, summary judgment in defendants' favor on plaintiff's state law claims is also appropriate.

## CONCLUSION

Accordingly, defendants' Motion for Summary Judgment, ECF [80], is GRANTED. This case is dismissed. All pending motions are DENIED as moot.

IT IS SO ORDERED.

DATED this 7th day of July, 2025.

Adrienne Nelson
United States District Judge